UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DONALD E. ALLEY,            )
                            )
        Plaintiff           )
                            )
v.                          )           Civil No. 09-636-B-W
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security, )
                            )
        Defendant           )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that he is disabled by a right hand fracture injury as well as asthma, depression, positional vertigo, and anemia, capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of asthma, depression, and alcohol dependence in remission, Finding 3, Record at 24; that he retained the residual functional capacity ("RFC") to perform light work, except that he had to

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, and gases, could understand and remember simple and complex instructions, could concentrate on and carry out simple tasks, and could interact appropriately with co-workers and supervisors, but should avoid work requiring frequent contact with the general public, Finding 5, *id*. at 26; that, considering his age (50 years old, defined as an individual closely approaching advanced age, on the alleged disability onset date of September 24, 2005), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 31; and that he, therefore, was not disabled from September 24, 2005, through the date of the decision, October 26, 2007, Finding 11, *id*. at 32.[2] The Appeals Council declined to review the decision, *id*. at 1-4, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S.

---

[2] The plaintiff was insured for SSD benefits through December 31, 2009, *see* Finding 1, Record at 24, subsequent to the date of the decision.

137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 4 of the sequential process. At Step 4, the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

The plaintiff seeks reversal and remand on the bases that: (i) in the face of newly submitted evidence, the Appeals Council denied review on an egregiously mistaken ground, (ii) the administrative law judge presented a flawed hypothetical question to the vocational expert present at the plaintiff's hearing, rendering that expert's testimony irrelevant, and (iii) the administrative law judge relied on vocational expert testimony containing unresolved inconsistencies with the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"). *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 11) at 1-10. I find no reversible error and, hence, recommend that the commissioner's decision be affirmed.

## A. Denial of Appeals Council Review

Following the issuance of the administrative law judge's unfavorable decision on October 26, 2007, the plaintiff's counsel submitted a request for Appeals Council review dated December 19, 2007, accompanied by a supporting memorandum. *See* Record at 7-18. The memorandum supplied, as reasons for the plaintiff's disagreement with the administrative law judge's decision and his request for review, that (i) the plaintiff was found capable of performing two jobs, those of bench inspector and cleaner/housekeeper, that, facially and as defined in the DOT, are inconsistent with a need to avoid concentrated exposure to fumes, odors, and dust, (ii) the cleaner/housekeeper job, as defined in the DOT, is inconsistent with a need to avoid frequent contact with the general public, and (iii) the bench inspector job, as defined in the DOT, is inconsistent with a limitation to concentrating on and carrying out simple tasks. *See id*. at 8-10.

By cover letter dated September 17, 2008, the plaintiff's counsel submitted additional evidence to the Appeals Council in the form of an August 12, 2008, letter from a manager of Atlantic Fleet Services Corporation ("Fleet Services"), a former employer of the plaintiff, and occupational health notes of The Jackson Laboratory ("Jackson Lab"), another former employer, spanning the period from August 11, 2000, through November 4, 2003. *See id*. at 363-72. The cover letter stated, in its entirety:

> Mr. Alley received an unfavorable decision from an Administrative Law Judge on October 26, 2007. This office filed a Request for Review by the Appeals Council and Supporting Memorandum on December 19, 2007. At this time, I am enclosing documentation which Mr. Alley has received from his prior employers, Jackson Laboratory and Atlantic Fleet Services. Please consider this information with respect to Mr. Alley's appeal.

*Id*. at 363.

4

The Appeals Council informed the plaintiff, by letter dated October 30, 2009, that it had declined his request for review. *See id*. at 1. It stated, in relevant part:

> In looking at your case, we considered the contentions raised by your attorney and the additional evidence listed on the enclosed Order of Appeals Council [the Fleet Services letter and Jackson Lab notes].
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> According to the Dictionary of Occupational Titles, the jobs cited by the vocational expert do not require . . . significant work around environmental conditions. The medical records from the Jackson Laboratory dated August 2000 through November 2003 are records prior to the claimant's alleged onset of disability of September 24, 2005. In addition, the Administrative Law Judge accommodated the claimant's limitations in social interactions in the residual functional capacity in Finding No. 5.

*Id*. at 1-2.

In *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2001), the First Circuit made clear that there are two circumstances in which remand based on submission of evidence subsequent to the issuance of an administrative law judge's decision is appropriate: (i) when that evidence is new and material *and* a claimant demonstrates good cause for its belated submission and (ii) when, regardless of whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Mills*, 244 F.3d at 5-6.

The plaintiff invokes the second basis for remand, arguing that the Appeals Council was egregiously mistaken in finding that the new evidence did not provide a basis for changing the administrative law judge's decision because:

1. To the extent that the administrative law judge dismissed claims of limitations in interaction with co-workers and supervisors on the ground of lack of objective evidence of the

5

same, the Fleet Services and Jackson Lab evidence supplies such objective evidence. *See* Statement of Errors at 2, 5.

2. To the extent that the administrative law judge relied on the mental RFC assessment of a Disability Determination Services ("DDS") nonexamining consultant, M.E.M., Ph.D., in dismissing claims of limitations in interactions with co-workers and supervisors, the Fleet Services and Jackson Lab evidence undermines that reliance, demonstrating that the consultant was wrong on that point. *See id*. at 6-7.

3. To the extent that the administrative law judge relied on then-existing record evidence in determining that the plaintiff had shown no difficulty in interacting with treatment providers, he mischaracterized the record. *See id*. at 2-3, 5-6. Hence, that finding does not provide an independent basis for judging the plaintiff not limited in interactions with others besides the general public. *See id*. at 5-6.

4. The vocational expert testified, at hearing, that limitations involving interactions with co-workers and supervisors would render the plaintiff unemployable. *See id*. at 6.[3]

The First Circuit has emphasized that the Appeals Council's reasons for denying review are owed "great deference[,]" although "they are ordinarily not beyond review in extreme cases." *Mills*, 244 F.3d at 6. It is difficult to see how this qualifies as an extreme case, or how the Appeals Council's grounds for denying review could have been egregiously mistaken, when the plaintiff's counsel delineated the bases on which his client sought Appeals Council review but omitted to argue to that body, as he does now to this court, that the new evidence undermined the finding of a lack of limitations on interacting with co-workers and supervisors. This is so even

---

[3] The vocational expert testified that "[i]f a person had a *marked* or *serious* limitation relating to interacting with coworkers, supervisors or the general public, that would in effect make that person unemployable." Record at 61 (emphasis added).

though the plaintiff's counsel plausibly contended at oral argument that the Appeals Council addressed not only the specifically-raised DOT arguments but also the larger question of whether the new evidence undermined the administrative law judge's findings as to the plaintiff's capacity for social functioning when it stated: "In addition, the Administrative Law Judge accommodated the claimant's limitations in social interactions in the residual functional capacity in Finding No. 5." Record at 2.

Nonetheless, assuming *arguendo* that plaintiff's counsel's default is not dispositive, the Appeals Council's decision cannot fairly be characterized as egregiously mistaken. As counsel for the commissioner contended at oral argument, the Fleet Services letter fairly can be characterized as the more probative of the two pieces of evidence in that it sheds light on the plaintiff's functioning closer to the time of his alleged onset of disability on September 24, 2005. The Fleet Services letter primarily identifies as problematic the plaintiff's dealings with the general public:

> Mr. Alley was a seasonal part time employee from June of 1997 until September of 2005 when he was dismissed due to unacceptable behavior. He was employed in a position dealing directly with the public and would display fits of anger, often using inappropriate language. These episodes would occur seemingly unprovoked by customers and co-workers and became increasingly problematic to the day-to-day operations of the facility and therefore was not suitable to our business environment.

*Id*. at 364. The Appeals Council reasonably could have construed the letter as consistent with the administrative law judge's finding of a restriction on interaction with the public, but not on interaction with co-workers or supervisors. That body hardly fairly can be said to have been egregiously mistaken in such a conclusion.

At oral argument, counsel for the commissioner did not discuss the Jackson Lab notes, evidently relying on the Appeals Council's observation that those notes addressed the plaintiff's

7

functioning during a time frame two or more years prior to his alleged onset date of disability. *See* Record at 2. Counsel for the commissioner did point to evidence of record that the plaintiff's depression was characterized as stable or improving on medication during the period following that alleged onset date. *See id*. at 202-03, 276-77, 309, 312.

The plaintiff's counsel protested that (i) these treatment notes shed no light on his client's ability to interact with co-workers or supervisors, the plaintiff having by then ceased working, and (ii) the administrative law judge did not rely on those notes but, rather, discounted the plaintiff's allegations of difficulty interacting with co-workers and supervisors on the basis that "[a]side from [the plaintiff's] subjective reports, there is little objective evidence demonstrating the elevated level of social dysfunction alleged." *Id*. at 30. The plaintiff's counsel contended that the Jackson Lab notes, as well as the Fleet Services letter, supplied the missing "objective evidence." Hence, he argued, the Appeals Council was egregiously mistaken in deeming them not to provide a basis for changing the administrative law judge's decision.

This argument, insofar as it pertains to the Jackson Lab notes, is not without force. But, as noted above, the First Circuit has made clear that a showing of egregious mistake by the Appeals Council is not readily or easily made. As the Appeals Council suggested, *see id*. at 2, the Jackson Lab notes reflect the plaintiff's functioning during a period approximately two or more years prior to his alleged onset date of disability. That is a rational basis on which to accord them diminished probative weight. In addition, and while reasonable minds can disagree, the Jackson Lab notes do not necessarily constitute "objective evidence" of a need for limits in contact with co-workers and supervisors. Although, as of August 20, 2003, the Jackson Lab occupational health staff raised serious concerns about the plaintiff's ability to do his job, *see id*. at 370, the notes do not reflect that he was disciplined at any time for conduct toward supervisors

8

or co-workers, or for any other reason, from June 6, 2002, when he sought help for his difficulties at work, through the date of his voluntary resignation, effective November 14, 2003, *see id*. at 365-72.[4]

Finally, lack of objective evidence was not the sole basis on which the administrative law judge discounted the elevated level of social dysfunction alleged. He also "note[d] that [the plaintiff] ha[d] sought irregular and sporadic treatment for his allegedly substantial psychological issues." *Id*. at 30. As counsel for the commissioner pointed out, treatment notes indicate that the plaintiff's depression improved and stabilized on medication.

The Appeals Council was not egregiously mistaken in deeming the new evidence not to provide a basis for changing the administrative law judge's decision.

## B. Failure To Convey Accurate RFC Finding to Vocational Expert

The plaintiff next complains that the administrative law judge posited to the vocational expert a hypothetical question in which the claimant could, *inter alia*, "concentrate on and carry out simple and complex tasks[,]" although he ultimately found the plaintiff capable of concentrating on and carrying out simple tasks only. *See* Statement of Errors at 7-8; *compare* Record at 59 *with* Finding 5, *id*. at 26. He contends that the discrepancy undermined the relevance of the vocational expert's testimony and, hence, the supportability of the administrative law judge's reliance on that testimony to meet the commissioner's Step 5 burden. *See* Statement of Errors at 8.

---

[4] The plaintiff was placed on a medical leave of absence commencing on September 11, 2003, from which he had not returned at the time he tendered his resignation. *See* Record at 371-72. In placing the plaintiff on medical leave of absence, an occupational health provider expressed concerns both that he was too distracted by anger and other issues to operate machinery safely and deliver animal supplies promptly and accurately and that his anger toward a supervisor could result in a disciplinary issue were he to lose control of himself and take his anger out on someone at work. *See id*. at 371. However, the notes reflect that the company intended to reinstate the plaintiff following his completion of treatment. *See id*. at 370-72.

The problem for the plaintiff is that he does not distinguish whether the error was material to an ability to perform the jobs of bench inspector or cleaner/housekeeper. *See id*. at 7-8. From all that appears, it is in fact immaterial to the question of capacity to perform the cleaner/housekeeper job, which the DOT describes as having a General Educational Development ("GED") reasoning level of 1, requiring only that an employee "[a]pply commonsense understanding to carry out simple one- or two-step instructions[,]" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT § 323.687-014.

The vocational expert testified that there are 8,000 cleaner/housekeeper jobs in Maine and 1.4 million in the national economy. *See* Record at 60. There is no suggestion that this job, standing alone, exists in insufficient numbers to meet the commissioner's Step 5 burden. Accordingly, any error was harmless.

### C. Discrepancies Between Vocational Expert Testimony, DOT

The plaintiff finally argues that the administrative law judge improperly relied on the vocational expert's testimony that a person with the posited limitations could perform the jobs of bench inspector and cleaner/housekeeper, although the description of those jobs in the DOT indicates that they are incompatible in certain respects with the posited limitations. *See* Statement of Errors at 8-10. This argument implicates Social Security Ruling 00-4p ("SSR 00-4p"), which provides, in relevant part: "When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010), at 244.

I conclude that any error was harmless.

The plaintiff first complains of a discrepancy between the job of bench inspector, described in the DOT as having a GED reasoning level of 3, *see* DOT § 609.684-010, and the stated limitation to the performance of simple tasks, *see* Finding 5, Record at 26. He correctly notes that this court has held that a person with a limitation to simple tasks or instructions seemingly is incapable of performing a job with a GED reasoning level of 3. *See* Statement of Errors at 8-9; *see also, e.g., Bossi v. Astrue*, Civil No. 09-60-P-H, 2009 WL 3633230, at *6 (D. Me. Oct. 31, 2009) (rec. dec., *aff'd* Nov. 20, 2009).[5] This court has not addressed the question of whether a person limited to the performance of simple tasks, but capable of understanding and remembering simple *and* complex instructions, would be precluded from performing a job with a GED reasoning level of 3. However, I need not resolve that question, for any error was harmless, the administrative law judge having supportably relied on the job of housekeeper/cleaner, as discussed below.

The plaintiff next contends that the limitation of avoidance of frequent contact with the general public is inconsistent with the job of housekeeper/cleaner, which the DOT reflects requires employees to render personal assistance to patrons. *See* Statement of Errors at 9. His assertion is without merit. The DOT reflects that the rendering of personal assistance to patrons is only one of a number of possible tasks of the job, which entails cleaning rooms and halls in commercial establishments, and that taking instructions or helping people is not a significant aspect of the job. *See* DOT § 323.687-014.

---

[5] This court recently reexamined and vacated its line of cases finding a discrepancy between a limitation to simple tasks or instructions and a GED reasoning level of 2. *See Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 WL 3361841, at *2-*6 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 16, 2010). However, it left open the question of reexamination of whether there is such a discrepancy with respect to the higher GED reasoning level of 3. *See id.* at *5 n.2.

The plaintiff finally contends that, on their face, both the jobs of bench inspector and cleaner/housekeeper would entail concentrated exposure to fumes, odors, and dust, rendering them incompatible with the RFC posited by the administrative law judge. *See* Statement of Errors at 9-10. He points out that, when questioned at hearing, the vocational expert agreed that "contact on a regular basis" with cleaning solutions is part of the job of cleaner/housekeeper, and that cleaner/housekeepers would "on occasion" have exposure to dust. *See id*. (quoting Record at 62-63).

Nonetheless, "contact on a regular basis" with cleaning solutions does not necessarily entail *concentrated exposure* to fumes or odors, and "occasional" exposure to dust does not equate to *concentrated exposure* to that substance. More importantly, the DOT does not indicate that either job entails such exposure. *See* DOT §§ 609.684-010 (no exposure to toxic caustic chemicals or to other environmental conditions), 323.687-014 (same).[6]

The plaintiff, therefore, falls short of making a persuasive case that, in contravention of SSR 00-4p, the administrative law judge failed to identify and resolve a seeming discrepancy between the restriction against concentrated exposure to fumes, odors, and dust and the jobs of bench inspector and cleaner/housekeeper as described in the DOT.

Because the administrative law judge's reliance on the job of cleaner/housekeeper survives the plaintiff's challenges, and there is no suggestion that that job, standing alone, exists in insufficient numbers to meet the commissioner's Step 5 burden, any error in failing to identify and explain a seeming discrepancy between the posited limitations and the DOT description of the job of bench inspector is harmless.

---

[6] The plaintiff further states that "bench inspecting jobs are in an industrial setting, which frequently entail[s] exposure to concentrated levels of dusts and fumes." Statement of Errors at 10. He cites no authority for this proposition, which is unsupported either by the DOT or the testimony of the vocational expert at hearing.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge